**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Earl L McClure, | No. CV-20-01389-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| State Farm Life Insurance Company, | |
| Defendant. | |

Pending before the Court is Plaintiff Earl McClure's Motion for Class Certification. (Doc. 39.)  Defendant State Farm Life Insurance Company ("State Farm") filed a Response, (Doc. 52), and Plaintiff replied, (Doc. 79).  Oral argument was held before the Court on April 7, 2022.  State Farm also filed a Motion to Exclude Declaration and Testimony of Scott J. Witt, (Doc. 54), to which Plaintiff responded, (Doc. 80), and State Farm replied, (Doc. 81).  The Court has considered the briefing and the relevant law and will now grant Plaintiff's Motion for Class Certification and deny State Farm's Motion to Strike for the reasons explained below.

## I. BACKGROUND

Plaintiff filed this lawsuit against State Farm on behalf of himself and a proposed class in relation to a $100,000 life insurance policy he bought from State Farm in February 1997.  (Doc. 1 ¶ 10.)  His lawsuit challenges State Farm's interpretation and implementation of its form universal life insurance policy: "Form 94030" (the "Policy"). (Doc. 39 at 8.)  State Farm sold the Policy in Arizona from 1994 to 2004.  (*Id.* at 9–10.)

Unlike a term life insurance policy, which includes only a death benefit, the Policy includes an account value which operates like a savings account (the "Account Value"). (*Id.* at 10.) Premiums are deposited into the Account Value and accumulate interest at a fixed rate. (*Id.*) Under the Policy, State Farm deducts specific charges from the Account Value each month. (*Id.*) Among these are (1) a cost of insurance charge ("COI Charge"), (2) charges for any riders, and (3) a $5 expense charge. (*Id.*)

The Policy states that State Farm may calculate the COI Charge rates for each policy year "based on the Insured's age on the policy anniversary, sex, and applicable rate class," and that "[s]uch rates can be adjusted for projected changes in mortality." (Doc. 1-2 at 3.) Plaintiff alleges that this Policy language expressly lists the exclusive factors that State Farm is permitted to use to determine the monthly COI Charge. Plaintiff alleges that after developing pricing mortality rates using only the listed factors, "State Farm increased those rates with undisclosed profit and expense loads." (Doc. 39 at 11.) Due to these loads, Plaintiff argues that the COI Charge rates implemented by State Farm "were on average more than double the rates determined using only the listed, contractual mortality factors." (*Id.* at 12.) Plaintiff contends that "[b]ecause these Policy overcharges result from State Farm's uniform administration of the Policy, all policy owners are subject to the same set of loaded COI [r]ates." (*Id.*)

Plaintiff brings two claims for breach of contract. Count I is a breach of contract claim for State Farm's alleged overcharging related to the COI Charge due to unauthorized expense loads. (Doc. 1 ¶¶ 58–65.) Count II is a breach of contract claim alleging that State Farm impermissibly deducts expenses from policyholders in amounts in excess of the fixed expense charges authorized by the Policy. (*Id.* ¶¶ 66–69.) Plaintiff's Complaint also alleges a claim for a conversion (Count III), (*Id.* ¶¶ 70–78), and a claim for declaratory relief (Count IV), (*Id.* ¶¶ 79–82).

Plaintiff moves this Court to certify the following class: "All persons identified in State Farm's policy owner data produced to Plaintiff's Counsel as an owner or former owner of a Form 94030 universal life insurance policy issued by State Farm in the State of

1    Arizona who was subject to at least one monthly deduction."  (Doc. 39 at 12.)

2    **II.    LEGAL STANDARD**

3             The class action is "an exception to the usual rule that litigation is conducted by and

4    on behalf of the individually named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564

5    U.S. 338, 348 (2011).  Class actions are governed by Federal Rule of Civil Procedure 23,

6    which permits certification only if: (1) the class is so numerous that joinder of all members

7    is impracticable; (2) there are questions of law or fact common to the class; (3) the claims

8    or defenses of the representative parties are typical of the claims or defenses of the class;

9    and (4) the representative parties will fairly and adequately protect the interests of the class.

10   Fed. R. Civ. P. 23(a).  The court must also find that at least one of the following three

11   conditions is satisfied: (1) the prosecution of separate actions would create a risk of: (a)

12   inconsistent or varying adjudications, or (b) individual adjudications dispositive of the

13   interests of other members not a party to those adjudications; (2) the party opposing the

14   class has acted or refused to act on grounds generally applicable to the class; or (3)

15   questions of law or fact common to the members of the class predominate over any

16   questions affecting only individual members, and a class action is superior to other

17   available methods for the fair and efficient adjudication of the controversy.  *See id.* 23(b).

18            Plaintiffs seeking class certification must show that they have met the requirements

19   of the four subsections in Rule 23(a) and at least one subsection in Rule 23(b).  *Zinser v.*

20   *Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  A district court has broad

21   discretion to certify a class as long as it is exercised within the framework of Rule 23.  *Id.*

22   The party seeking class certification has the burden of affirmatively demonstrating that the

23   class meets the requirements of [Rule 23]."  *Mazza v. Am. Honda Motor. Co.*, 666 F.3d

24   581, 588 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop.,*

25   *Inc. v. Bumble Bee Foods LLC*, --- F.4th ---, 2022 WL 1053459, at *19 n. 32 (9th Cir. Apr.

26   8, 2022).  "The plaintiff must prove entitlement to class certification by a preponderance

27   of the evidence."  *Bobbitt v. Milberg LLP*, No. CV-09-00629-TUC-RCC, 2021 WL

28   2002950, at *4 (D. Ariz. May 19, 2021).  "Merits questions may be considered to the

1   extent—but only to the extent—that they are relevant to determining whether the Rule 23

2   prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans &*

3   *Tr. Funds*, 568 U.S. 455, 466 (2013).

4   **III.   DISCUSSION**

5          **A. Class Certification**

6          Plaintiff argues that the proposed class meets the requirements of Rule 23(a) as well

7   as the requirements of Rule 23(b)(3).  (*Id.* at 14.)  He also argues that his claim for a

8   declaratory judgment meets the requirements of Rule 23(b)(2).

9                 1.  Merits Arguments

10         State Farm first argues that Plaintiff's proposed class cannot be certified because

11  Plaintiff's reading of the Policy language is implausible and does not support his breach of

12  contract theory.  (Doc. 52 at 19.)  For Count I, State Farm relies on the decision in *Bally*—

13  granting in part and denying in part State Farm's motion for summary judgment—to argue

14  that the text of the Policy does not support Plaintiff's breach of contract theory in Count I

15  related to the COI Charge.  (*Id.* (citing *Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d

16  495, 503 (N.D. Cal. 2021))).  Moreover, State Farm also argues that the Policy language

17  does not support the Plaintiff's theory for Count II, which is premised upon the language

18  in the Policy related to the $5 monthly expense charge and 5% premium expense charge.

19  (*Id.* at 21–22.)

20         State Farm invites the Court to make a merits determination at this stage.  However,

21  this is unnecessary at this time because the merits of Plaintiff's claims need not be analyzed

22  in order for Plaintiff to show that his case meets the requirements of Rule 23.  *See Amgen*

23  *Inc.*, 568 U.S. at 465–66.  Such questions are better suited for summary judgment.  At this

24  juncture, the Court need only decide whether the interpretation of the Policy language will

25  generate common, predominating class-wide answers.  Because the Policy is a standard

26  contract with terms that cannot be negotiated, the Court finds that the interpretation of the

27  policy can produce class-wide answers.  The Court will analyze this further below in

28  section III(A)(6)(a)(i).  Accordingly, the Court will not—at this stage—make a merits

1  determination on Plaintiff's contract claims because such an analysis is unnecessary to

2  show compliance with Rule 23.

3                                          2.  <u>Numerosity</u>

4       Plaintiff has satisfied the numerosity requirement.  State Farm does not contest

5  numerosity of the class.  "Generally, forty or more members will satisfy the numerosity

6  requirement."  *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 241 (D. Ariz. 2019).

7  Because Plaintiff's proposed class contains over 13,500 policyholders, this requirement is

8  easily satisfied.

9                                          3.  <u>Commonality</u>

10       The proposed class also satisfies the commonality requirement.  "A proposed class

11  satisfies the commonality requirement if there is at least one question of fact or law

12  common to the class."  *Knapper*, 329 F.R.D. at 241–242.  "[C]ommonality requires that

13  class members' claims 'depend upon a common contention' such that 'determination of its

14  truth or falsity will resolve an issue that is central to the validity of each claim in one

15  stroke.'"  *Mazza*, 666 F.3d at 588 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350)

16  (brackets removed).  Even a single common question will do.  *Wal-Mart Stores, Inc.*, 564

17  U.S. at 359.

18       Here, Plaintiff has satisfied the commonality requirement because each claim is

19  based on a form contract and a uniform course of conduct towards each policyholder by

20  State Farm.  All of Plaintiff's claims turn on the interpretation of the form Policy, the terms

21  of which could not be negotiated.  Questions common to each class member include

22  whether State Farm is limited to using only those factors disclosed in the policy to calculate

23  the COI Charge, whether State Farm in fact used only those factors disclosed in the policy

24  when determining COI Charge rates, and whether loading expenses in COI Charge rates

25  violated the Policy's cap of $5.00 per month on expense charges.  *See Vogt v. State Farm*

26  *Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1955425, at *3 (W.D. Mo. Apr. 24,

27  2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020) (listing questions common to each class

28  member).  All of these questions are common here.  Thus, commonality is easily met.

1       4.  <u>Typicality</u>

2           Plaintiff argues that typicality is satisfied here because "[a]ll putative class members

3   were subject to identical policy language, State Farm performed (and breached) the Policy

4   in the same way for each class member, and each putative class member was injured in the

5   same way by that conduct."  (*Id.*)  State Farm contests typicality by arguing that there are

6   unique defenses against the Plaintiff in this case—specifically, Plaintiff "cancelled his

7   Policy after only two years, long before State Farm repriced the costs of insurance rates in

8   2002," and Plaintiff brought this case because he was frustrated with State Farm's billing

9   processes related to a different policy through State Farm.  (Doc. 52 at 27.)

10          Typicality is met if "the claims or defenses of the representative parties are typical

11  of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "As long as the

12  representative's claims are 'reasonably coextensive with those of absent class members[,]

13  they need not be substantially identical."  *Knapper*, 329 F.R.D. at 242 (quoting *Staton v.*

14  *Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)) (alteration original).  Typicality refers to

15  the "nature of the claim or defense of the class representative, and not the specific facts

16  from which it arose or the relief sought."  *Id.* (quoting *Parsons v. Ryan*, 754 F.3d 657, 685

17  (9th Cir. 2014)).

18          Here, despite State Farm's arguments to the contrary, Plaintiff has shown that his

19  claims and defenses are typical of those of the class.  Plaintiff's claims, and the claims of

20  the putative class members, all arise out of the interpretation of the standard form Policy

21  from State Farm.  Plaintiff's claims are typical of all other class members; he alleges he

22  was injured when State Farm loaded expenses that he alleges it was not allowed to factor

23  in under the terms of the Policy.  The fact that Plaintiff only kept the Policy for two years

24  is of no consequence—Plaintiff still would have suffered the same monthly deductions on

25  which the claims of all putative class members would rest.  Furthermore, although State

26  Farm lowered the COI Charges in 2002, it does not argue that it stopped loading factors

27  not listed in the Policy at that time.  Thus, the injury to putative class members would have

28  continued—although to a lesser extent—at that time.  Moreover, State Farm fails to explain

how Plaintiff's personal motivation for bringing his case is of any relevance or in any way affects the validity of his claims. Accordingly, the Court finds that Plaintiff has satisfied the typicality requirement.

### 5. Adequacy of Representation

Plaintiff advances three arguments for why he satisfies the adequacy of representation requirement. First, Plaintiff argues that he was subjected to State Farm's uniform practice of using unauthorized factors to calculate COI Charge rates just like all other potential class members. (Doc. 39 at 17–18.) Second, Plaintiff argues that he has a personal interest in recouping the amount he alleges he was overcharged—$1,171.59. (*Id.* at 18.) Third, Plaintiff argues that he has hired competent, experienced, and qualified counsel who have experience with class actions and cost of insurance cases. (*Id.*)

State Farm argues that Plaintiff is not an adequate class representative for largely the same failed arguments regarding typicality. Additionally, it argues that "Witt's damages models effectively assume a duration beginning at the Policy inception—that is, that all class members underwent underwriting around the time they Obtained the Policy. But Plaintiff did not do so, because he had converted from a different life insurance policy." (Doc. 52 at 33.)

The adequacy of representation requirement requires that a plaintiff and their counsel "fairly and adequately protect the interests of the class." Rule 23(a)(4). "In determining this standard, the court asks: '(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Knapper*, 329 F.R.D. at 243 (quoting *Staton*, 327 F.3d at 957).

Here, Plaintiff has satisfied the adequacy of representation requirement. First, State Farm does not argue that Plaintiff or his counsel have conflicts of interest with other class members. The Court finds no basis to believe such a conflict exists. The fact that Plaintiff did not have his Policy during the re-pricing in 2002 does not result in a conflict of interest because, pursuant Plaintiffs' allegations, overcharges continued to occur. Plaintiff is not

an inadequate class representative merely because Plaintiff suffered fewer overcharges. Second, the Court finds that the named Plaintiff and his counsel will prosecute the action vigorously.  As argued by Plaintiff, he has a financial interest in vigorously prosecuting this action if he prevails.  Further, Plaintiff has competent counsel experienced in prosecuting class actions.  Thus, the Court finds that Plaintiff has met the adequacy of representation requirement.

### 6.  Rule 23(b)(3)

Rule 23(b)(3) requires that (1) "the questions of law or fact common to the class predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiff must establish predominance by a preponderance of the evidence.  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, --- F.4th ---, 2022 WL 1053459, at *5 (9th Cir. Apr. 8, 2022).

### a.    *Predominance*

Rule 23(b)(3)'s predominance test itself consists of two parts.  "First, a plaintiff must show that common questions of law and fact predominate over individual questions. Second, a plaintiff must present a model of damages that (1) identifies damages that stem from the defendant's alleged wrongdoing and (2) is 'susceptible of measurement across the entire class.'"  *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 303 (N.D. Cal. 2020) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34–38 (2013)).  Rule 23(b)(3)'s predominance requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).  "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'"  *Id.* (quoting 2 W.

Rubenstenin, Newberg on Class Actions § 4:50, at 196–197 (5th ed. 2012)) (alterations original).  "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses particular to some individual class members.'"  *Id.* (quoting 7AA C. Wright, A. Miller, & M. Dane, Federal Practice and Procedure § 1778, at 123–124 (3d ed. 2005)).  A court's predominance inquiry under Rule 23(b)(3) is "far more demanding" than that conducted to establish commonality under Rule 23(a)."  *Amchem*, 521 U.S. 623–624.

State Farm argues that individual issues predominate in this case because how each policyholder interpreted the policy will require individual inquiries.  (Doc. 52 at 22.)  It contends that Plaintiff's breach of contract theories are not supported by common proof.  (*Id.* at 18.)  Further, State Farm argues that the statute of limitations in Arizona causes individual issues to predominate in this case.  (*Id.* at 31.)  State Farm also takes exception with Plaintiff's expert's damages model.  (*Id.* at 24.)

### i.  Individualized Issues Surrounding the Policy

State Farm argues that nothing in the text of the policy supports Plaintiff's reading of the Policy for his breach of contract claims in Count I and Count II.  (*Id.* at 22.)  However—State Farm contends—even if some putative class members agree with that reading, it would only underscore the individualized issues precluding predominance.  (*Id.*)  State Farm argues, "Plaintiff likewise cannot prove a breach through common evidence because the Policy's text does not support his theory, and any further proof about how thousands of policyholders might view the Policy's language would necessarily be individualized."  (*Id.* at 23.)  State Farm invites the Court to engage in a merits dispute of the Policy language, which is only permitted at this stage of the case to the extent that it allows the Court to determine if the class can be certified pursuant to Rule 23.  *See Amgen Inc.*, 568 U.S. at 466.

Under Arizona law, standardized agreements are "interpreted wherever reasonable

1    as treating alike all those similarly situated, without regard to their knowledge or

2    understanding of the standard terms of the writing." *Darner Motor Sales, Inc. v. Universal*

3    *Underwriters Ins. Co.*, 682 P.2d 388, 396 (Ariz. 1984) (quoting Restatement (Second) of

4    Contracts § 211(2)).  Indeed, "[a] claim for breach of a standard form contract or company

5    policy often may be suitable for class-wide treatment." *Garza v. Gama*, 379 P.3d 373, 376

6    (Ariz. Ct. App. 2016).  If the Court were to accept State Farm's argument, "no breach of

7    contract case could ever obtain class certification because every case would depend upon

8    an individual's understanding of the agreement he had signed." *Garza v. Swift Transp.*

9    *Co., Inc.*, No. 1 CA-CV- 07-0472, 2008 WL 3009961, at *6 (Ariz. Ct. App. July 31, 2008),

10   *vacated on other grounds*, 213 P.3d 1008 (2009).

11          Courts in this district have rejected attempts by defendants to prevent class

12   certification of breach of contract claims arising from standardized agreements by arguing

13   that extrinsic evidence related to each class member's understanding of the agreement

14   would need to be litigated.  *See, e.g.*, *Winkler v. DTE, Inc.*, 205 F.R.D. 235, 243 (D. Ariz.

15   2001) (finding that individual issues did not affect the interpretation of the contractual

16   terms of a form contract).  Additionally, other courts that have examined this same issue at

17   the class certification stage have rejected State Farm's argument.  *See Bally*, 335 F.R.D. at

18   302 (rejecting State Farm's argument that the parties will need to litigate individualized

19   issues and citing Restatement (Second) of Contracts § 211(2)); *Whitman v. State Farm Life*

20   *Ins. Co.*, No. 3:19-CV-6025-BJR, 2021 WL 4264271, at *6 (W.D. Wash. Sept. 20, 2021)

21   (rejecting State Farm's argument that it was entitled to present extrinsic evidence regarding

22   each policyholder's entry into the contract and stating that State Farms argument "runs

23   counter to the reality of the circumstances under which these Policies were issued").

24           State Farm argues that under Arizona law, extrinsic evidence may be admitted to

25   interpret, but not to contradict, the policy language.  (Doc. 52 at 23 (citing *James River Ins.*

26   *Co. v. Thompson*, No. CV-20-01052-PHX-DGC, 2021 WL 4805328, at *2–*3 (D. Ariz.

27   Oct. 13, 2021))).  State Farm also relies on *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023,

28   1030 (8th Cir. 2010), to argue that this class cannot be certified because extrinsic evidence

will be necessary to interpret the meaning of the Policy provisions.  (*Id.*)  However, the Court is not persuaded by those cases.  *James River Ins.* decided a discovery dispute as to whether the parties could engage in discovery of extrinsic evidence; it was not a class action case.  2021 WL 4805328, at *2.  Thus, its holding has little bearing on the current case.  Furthermore, Defendant's reliance on *Avritt* does not persuade this Court that predominance is not met in this case.  In *Avritt*, the Eighth Circuit affirmed the district court's denial of class certification on a breach of contract claim premised on the terms of an annuity contract finding "the existence of two or more reasonable interpretations opens the door for extrinsic evidence about what each party intended when it entered the contract."  615 F.3d at 1030.  As noted by the Court in *Whitman*, "there is no indication that the contract in question specifically prohibited sales agents from modifying the terms of the contract, as the instant Policy does."  *Whitman*, 2021 WL 4264271, at *7.  Here, the terms of the agreement could not be changed by sales agents or prospective policyholders.  The Policy itself states, "Only an officer has the right to change this policy.  No agent has the authority to change the policy or to waive any of its terms."  (Doc. 1-2 at 4.)  Furthermore, *Avritt* was decided under Washington law, and the Arizona Supreme Court has clearly ruled that, under Arizona law, those who enter a standard form contract are treated similarly without regard to their knowledge or understanding of the written terms.  *Darner Motor Sales, Inc.*, 682 P.2d at 396.  Accordingly, the Court finds that Plaintiffs have met the predominance requirement in this case regarding their breach of contract claims.

ii.   Statute of Limitations

State Farm also argues that Arizona's statute of limitations causes individual issues to predominate the case.  (Doc. 52 at 31.)  Plaintiff argues that policy owners had no way to know that State Farm was including undisclosed profit and expense loads in the Policy's COI Charge rates and that every court to examine the statute of limitations defense has rejected the defense.  (Doc. 79 at 10.)

In Arizona, the statute of limitations for a breach of contract claim is six years.  *See*

A.R.S. § 12-548. "Under Arizona's discovery rule, a claim does not accrue until 'the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause.'" *Perez v. First Am. Title Ins. Co.*, No. CV-08-1184-PHX-DGC, 2010 WL 1507012, at *3 (D. Ariz. Apr. 14, 2010) (quoting *Gust Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995)). It is the Plaintiff's burden to establish that the discovery rule applies to delay the statute of limitations. *Id.* "The existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones." *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975). Indeed, "[c]ourts have been nearly unanimous . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action as long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present." *Schramm v. JPMorgan Chase Bank, N.A.*, 2011 WL 5034663, at *10 (C.D. Cal. Oct. 19, 2011) (quoting *In re Energy Sys. Equip. Leasing Sec. Litig.*, 642 F. Supp. 718, 752–53 (E.D.N.Y. 1986)).

Other courts ruling on this specific issue found that the statute of limitations defense did not preclude a finding of predominance. *See Bally*, 335 F.R.D. at 304 (noting that State Farm had not produced any evidence to show that policyholders would have been on notice that State Farm was considering unlisted variables in calculating COI Charges); *Vogt*, 2018 WL 1955425, at *6 ("there is nothing to indicate that individual statute-of-limitations issues would predominate so as to make class certification impractical or inappropriate"), *aff'd*, 963 F.3d 753, 764–65 (8th Cir. 2020); *Whitman*, 2021 WL 4264271, at *8–9 ("State Farm has failed to produce any evidence to suggest that individual statute of limitation issues would predominate here.").

As in the other cases deciding this issue, here, State Farm has merely speculated that some claims may be barred by the statute of limitations. (*See* Doc. 52 at 31–32.) At the class certification stage, this is insufficient preclude a finding of predominance when a plaintiff has otherwise shown that common questions of law and fact predominate. *See*

1    *Schramm*, 2011 WL 5034663, at *11 ("[S]peculation that some class members' claims may

2    be barred on the basis of actual knowledge is not sufficient to defeat certification.").  State

3    Farm has not pointed to conclusive evidence which would allow the Court to conclude that

4    Plaintiff should have known that State Farm was using factors not listed in the policy to

5    calculate COI Charge rates.  The snippets of Plaintiff's deposition highlighted by State

6    Farm do not show that Plaintiff could have or should have known that State Farm was using

7    such unlisted factors.  Accordingly, the Court finds that State Farm's statute of limitations

8    defense does not preclude a finding that Plaintiff has shown predominance.

9                            iii.   Plaintiff's Damages Model

10           The Court finds that Plaintiff's proposed damages model satisfies the predominance

11   requirement.   In order to satisfy the second prong of the predominance requirement,

12   Plaintiff must present a model of damages that (1) identifies damages that stem from the

13   defendant's alleged wrongdoing and (2) is susceptible of measurement across the entire

14   class.  *See Bally*, 335 F.R.D. at 303 (quoting *Comcast Corp.*, 569 U.S. at 34–38).  The

15   Court will undergo an extensive analysis of Plaintiff's damages model, *see infra* section

16   III(B), but for the purposes of predominance, the Court finds that Plaintiff's damages model

17   satisfies both requirements.

18           Plaintiff's damages model can identify the amount each putative class member was

19   allegedly overcharged.  Plaintiff's expert, Mr. Witt, calculates these amounts by calculating

20   substitute COI Charge rates based solely on mortality factors using State Farm's mortality

21   tables.  Comparing the new COI Charge rates to what putative class members were actually

22   charged will result in a calculation of damages for each class member.  Furthermore, this

23   model is susceptible of measurement across the entire class because the substitute COI

24   Charge rates calculated by Plaintiff's expert can be applied on a class-wide basis to

25   calculate damages for each individual policyholder in the class.   Plaintiff's expert

26   calculates total damages to the putative class to be in excess of $18 million.  (Doc. 39 at

27   23.)  Every other court to examine the issue has also found that the plaintiffs' damages

28   model met the requirements of the predominance analysis for similar reasons.  *See*

1  *Whitman*, 2021 WL 4264271, at \*9–10; *Bally*, 335 F.R.D. at 299; *Vogt*, 2018 WL 1955425,

2  at \*5. The Court will undergo a more extensive analysis of Plaintiff's expert damages

3  model below, but the Court finds that Plaintiff's damages model satisfies the predominance

4  requirements.

5                                 *b.    Superiority*

6          To satisfy the superiority requirement of Rule 23(b)(3), Plaintiff must show that "a

7  class action is superior to other available methods for fairly and efficiently adjudicating the

8  controversy." Fed. R. Civ. P. 23(b)(3).

9          The Court finds that Plaintiff has satisfied the superiority requirement in this case.

10  State Farm does not argue that the Plaintiff has failed to satisfy superiority.  This case

11  involves the interpretation of a form contract, the interpretation of which will apply to all

12  class members making class action an efficient form of adjudication.  Furthermore, because

13  the recoveries of each individual class member will be relatively small, a class action is

14  superior to other methods of adjudication. *See Whitman*, 2021 WL 4264271, at \*10 (citing

15  *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).  Thus, the Court finds

16  that the superiority requirement has been met.

17                                 7.   Rule 23(b)(2)

18          Plaintiff also argues that his claim for declaratory judgement (Count IV) satisfy the

19  requirements of Rule 23(b)(2).  Rule 23(b)(2) permits class certification where "the party

20  opposing the class has acted or refused to act on grounds that apply generally to the class,

21  so that final injunctive relief or corresponding declaratory relief is appropriate respecting

22  the class as a whole."  This Court has found that the terms of the Policy are the same for

23  each prospective class member.  Therefore, because the terms of the Policy are the same

24  for each prospective class member, the interpretation will result in a declaratory judgment

25  applicable to all class members.  Thus, a claim for declaratory judgment satisfies Rule

26  23(b)(2). *See Whitman*, 2021 WL 4264271, at \*10 (certifying plaintiff's claim for

27  declaratory judgment and injunctive relief under Rule 23(b)(2)); *Bally*, 335 F.R.D. at 305

28

1  (same); *Vogt*, 2018 WL 1955425, at *7–*8 (same).[1]

2          8.  <u>Conversion Claim</u>

3       State Farm also argues that Plaintiff's conversion claim (Count III) cannot be

4  certified.  (Doc. 52 at 26.)  State Farm first argues that Plaintiff cannot repackage a breach

5  of contract claim as a conversion claim.  (*Id.*)  Second, State Farm argues that "the same

6  issues that preclude class certification for Counts I and II would bar certification for his

7  conversion claim, because Plaintiff relies on the same arguments and damages models for

8  certification on Count III."  (*Id.*)  Third, State Farm contends that it is entitled to introduce

9  evidence that a particular class member was aware of and consented to the challenged

10  conduct.  All three of State Farm's arguments regarding Plaintiff's conversion claim must

11  be rejected.

12       State Farm's first argument is a merits argument that is better suited for a dispositive

13  motion.  Therefore, the Court declines to rule on this issue at this time as it has little bearing

14  on class certification issues.  The Court rejects State Farm's second argument for the same

15  reasons that it rejected its arguments regarding Plaintiff's breach of contract claims.

16  Specifically, the Court has found that Plaintiff's breach of contract claims are suitable for

17  class certification and—as discussed further below in section III(B)—that his damages

18  model does not preclude certification.  Third, State Farm argues that it will need to present

19  evidence that individual consumers consented to State Farm's practices, which defeats

20  certification, but points to no evidence that indicates policy owners were aware of or

21  consented to State Farm's potentially improper expense loads.  Accordingly, the Court will

22  certify Plaintiff's conversion claim for the same reasons that it certified Plaintiff's breach

23  of contract claims.

24      **B.  Motion to Strike Plaintiff's Expert**

25       The expert in question, Scott Witt, is noticed as an actuarial expert to opine about

26  COI Charge rates.  State Farm asks the Court to preclude the expert claiming the opinions

27

28  [1] The Court will disregard State Farm's arguments regarding injunctive relief because Plaintiff does not seek injunctive relief.  (*See* Doc. 79 at 22.)

1   are not admissible under Rule 702 and *Daubert*.  State Farm does not argue that Mr. Witt

2   is unqualified or not an expert in this field, but argues, instead, that his opinions as an expert

3   are not relevant or reliable.[2]

4        Federal Rule of Evidence 702 states:

5        A witness who is qualified as an expert by knowledge, skill,
        experience, training, or education may testify in the form of an
6        opinion or otherwise if:

7

8            (a) the expert's scientific, technical or other specialized
            knowledge will help the trier of fact to understand the
9            evidence or to determine a fact in issue;
            (b) the testimony is based on sufficient facts or data;
10            (c) the testimony is the product of reliable principles and
            methods; and
11            (d) the expert has reliably applied the principles and
            methods to the facts of the case.
12

13   *Daubert* requires the Court to act as a gatekeeper to exclude unreliable expert

14   testimony.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  That

15   gatekeeping function applies to all expert testimony, not just scientific testimony.  *Kumho*

16   *Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999).  The *Daubert* requirements are flexible

17   depending on the proposed testimony.  *Id.*; *see United States v. Hankey*, 203 F.3d 1160,

18   1168 (9th Cir. 2000).   Specifically, "*Daubert*'s tests for the admissibility of expert

19   scientific testimony do not require exclusion of expert testimony that involves specialized

20   knowledge rather than scientific theory."  *United States v. Bighead*, 128 F. 3d 1329, 1330

21   (9th Cir. 1997) (citing *United States v. Cordoba*, 104 F.3d 225 (9th Cir.1997)).

22        Expert testimony is admissible only if it is both relevant and reliable.  *Daubert*, 509

23   U.S. at 589.  To be "relevant," the expert testimony must "fit" the facts of the case and

24   must "logically advance[] a material aspect of the proposing party's case."  *Daubert v.*

25   *Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*").  Expert

26   opinion testimony is "reliable if the knowledge underlying it has a reliable basis in the

27

28   _____
    [2] The Court has reviewed Mr. Witt's qualifications and experience and agrees that he is
    qualified to testify as an actuarial expert, particularly in the insurance industry.

knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)).  In assessing reliability, courts may consider "(1) whether the theory can be and has been tested, (2) whether the theory has been peer reviewed and published, (3) what the theory's known or potential error rate is, and (4) whether the theory enjoys general acceptance in the applicable scientific community." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017); *Daubert*, 509 U.S. at 593–94.  The law grants a trial judge "broad latitude" to determine whether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case.  *Kumho*, 526 U.S. at 153.  Challenges to the "correctness of [an expert] opinion, as opposed to its relevancy and reliability, are a matter of weight, not admissibility." *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014).  The burden of proof rests with the party seeking to present the expert testimony.  *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).

In this case, one of the issues is whether State Farm overcharged Plaintiff for his COI Charge and expenses.  A normal juror would not understand the calculations necessary to quantify the COI Charge, and this testimony would be helpful to the trier of fact.  This factor is not challenged by State Farm.

However, State Farm does challenge the relevance of the evidence and reliability of Mr. Witt's methods.  They argue that his testimony is not relevant—as related to Count I— because his methodology does not prove that anything above his substituted COI Charge rate is for expenses and profit margins.  As to Count II, State Farm argues it is not relevant because it does not identify the amount of the COI Charges that go toward expenses alone, as opposed to profits.  The Court disagrees.

As to Count I, Mr. Witt explains that he calculated what Plaintiff argues is the appropriate COI Charge rate ("Substitute COI Rate") based solely on mortality factors by using State Farm's mortality tables and a multiplier used by State Farm.  He then calculates what the actual COI Charge should have been using the Substitute COI Rate.  Mr. Witt then carries that calculation throughout the life of the policy in each subsequent policy

period.  This results in a calculation of what the Account Value should have been, which can be compared to the actual Account Value to determine damages.   State Farm's main challenge to this method is an attack on the Substitute COI Rate.  Whether that rate is accurate or not is better left for cross examination because the trial court should not be assessing the accuracy of the testimony, only its relevance and reliability.  *See Messick*, 747 F.3d at 1199.

State Farm's arguments as to Count II relate to Mr. Witt's partitioning State Farm's COI rates into three parts: mortality, expenses, and profit.   State Farm argues the methodology is flawed because they argue there is no way to partition between expense and profit.  Plaintiff points out that Mr. Witt relied on statements from State Farm that the asset share models can be used to distinguish between expenses and profit.  Mr. Witt then used the identified assumptions from the asset share models to create the damages model for Count II.   By partitioning the different parts of the COI Charge rates, Mr. Witt is able to pull out the expense portion to identify expenses that should not have been charged to the insureds according to Plaintiff's theory on Count II.  His calculations fit the theory for Count II.

As for reliability, State Farm argues that Mr. Witt erred by differentiating COI Charge rates based on policy duration and by not differentiating them based on tobacco use.  State Farm states that it "pooled" insureds without consideration of policy duration instead of using a different COI Charge rate based on policy duration.  State Farm also states that COI Charge rates differed for tobacco users and non-tobacco users.  It contends that these two differences in calculation support their argument that Mr. Witt's opinions are unreliable.  Plaintiff points out that, per Mr. Witt, State Farm's mortality tables relied on to create the mortality rates are "unpooled." (Doc. 42-4 at 18.)  The morality tables are also tobacco/nontobacco blended, meaning they do not distinguish between tobacco and nontobacco users.  (*Id.*)  The Court finds that these arguments relate to the inputs Mr. Witt used in his calculations and do not make his methodology unreliable.

Plaintiff's theory is that the language of the policy prohibits differentiation between

- 18 -

tobacco and non-tobacco users.  Accepting that theory as true, Mr. Witt's methodology is correct to ignore tobacco use.  Although State Farm argues that there are tobacco distinct rate classes, nothing in the policy language refers to tobacco usage.  Therefore, this distinction does not affect the reliability of Mr. Witt's opinions but is a challenge to the policy language and what it means, which is an issue for the jury.  The same does not necessarily hold true for Mr. Witt's use of policy duration as a distinguishing factor in pricing.  Plaintiff argues the policy language specifically refers to "policy year," suggesting that duration is supposed to be a factor.  However, the policy refers to "age" at the start of the policy year and not the policy duration. Thus, the Court disagrees with many of the other judges reading the policy. Nevertheless,  because of the issue discussed above regarding the unpooled duration as a basis for the mortality tables, this does not affect the Court's decision that Mr. Witt's methodology is reliable.

State Farm also argues the opinions are unreliable because the calculations, at times, resulted in higher COI Charge rates than those actually used by State Farm.  State Farm argues that these calculations are inconsistent with Plaintiff's theory because if Mr. Witt is removing expenses and profits from the COI Charges, then it should always be lower than the rates actually used.  While that does seem logically true, other courts have denied this argument.  *See,e.g.*, *Vogt v. State Farm Life Ins. Co.*, No. 2:16-cv-04170-NKL, 2018 WL 4937330, at *5 (W.D. Mo. Oct. 11, 2018); *Bally*, 335 F.R.D. at 300.   Courts have recognized that this reflects a business decision on the part of State Farm to recoup profits and expenses in the earlier years of the Policy by applying higher loads in the early years of a policy.  *Vogt*, 2018 WL 4937330, at *4–5.  Additionally, this Court agrees with the courts in *Spegele* and *Vogt* that "[t]he fact that the rates that State Farm actually charged were not always higher than the mortality rates that Plaintiffs' expert calculated does not mean that Plaintiffs' model does not adequately capture the non-mortality component of the charge."  *Spegele v. USAA Life Insurance Company*, 336 F.R.D. 537, 546 (W.D. Tex. 2020); *Vogt,* 2018 WL 4937330, at *4.

Mr. Witt explains how he calculated the Substitute COI Rates.  His methodology is

an application of mathematical principles that *can be* tested and challenged and *has been* tested and challenged by State Farm many times.  In addition, he used his experience in the insurance industry to understand how to adjust the calculations to account for Plaintiff's theory of the case.  Therefore, the Court finds that Plaintiff has established that Mr. Witt's opinions are relevant and reliable.  Accordingly, State Farm's motion to exclude his testimony will be denied.

The final argument as to reliability relates to Mr. Witt's methodology in calculating damages for Count II.  State Farm argues that the asset share workbooks cannot be used to partition the COI Charge rates and that, even if one could use the asset share workbooks for that purpose, Mr. Witt did it wrong.  As stated above, State Farm's employee has stated that the asset share workbook can be used to distinguish between expenses and profits.  Next, State Farm argues that he did not correctly identify "expenses" by including such costs as taxes and commissions.  This does not show that his methodology is unreliable but only that his calculation may be wrong, which should be challenged on cross-examination.  State Farm also argues that the opinions are unreliable because Mr. Witt cut off his analysis after 20 years.  However, State Farm's own documents show that State Farm developed COI Charge rates using a 20-year time frame for its profit objective.

State Farm also contends that the testimony should also be precluded under Rule 403, Fed. R. Evid.  State Farm makes no legitimate argument to support preclusion under Rule 403, but simply incorporates a conclusory statement at the end of their 29-page Motion to Exclude.  State Farm writes "any probative value Witt's opinions might provide is outweighed by their prejudicial effect, given the complexities of the ratemaking process, the need for rates to meet regulatory and actuarial standards, and the danger of misleading the jury through unconstrained manipulation of mortality data to produce unsupported damages awards."  (Doc. 54 at 35.)  First, evidence need not be excluded simply because it is prejudicial.  Rule 403 reads, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence." Fed. R. Evid. 403. Thus, even if Mr. Witt's opinion had a prejudicial effect that outweighed its probative value, Rule 403 would not require preclusion. The prejudice must be "unfair prejudice" and that must "substantially outweigh" any probative value. All relevant evidence is prejudicial, but it is "unfairly prejudicial" only if it tends to suggest or encourage a decision on improper reasoning. *See U.S. v. Looking Cloud*, 419 F.3d 781, 785 (8th Cir. 2005); *Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir. 1980). State Farm has not shown any unfair prejudice. Second, as discussed above, State Farm has not shown any unconstrained manipulation of mortality data to support its argument that the opinions would mislead the jury. The Court finds that the opinions of Mr. Witt should not be precluded under Rule 403.

IV. **CONCLUSION**

For the reasons discussed above,

**IT IS ORDERED** granting Plaintiff's Motion for Class Certification. (Doc. 39.)

**IT IS FURTHER ORDERED** certifying a class consisting of "[a]ll persons identified in State Farm's policy owner data produced to Plaintiff's Counsel as an owner or former owner of a Form 94030 universal life insurance policy issued by State Farm in the State of Arizona who was subject to at least one monthly deduction."

**IT IS FURTHER ORDERED** denying Defendant's Motion to Exclude Declaration and Testimony of Scott J. Witt. (Doc. 54.)

Dated this 29th day of April, 2022.

Honorable Susan M. Brnovich
United States District Judge

- 21 -