**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Earl L McClure, | No. CV-20-01389-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| State Farm Life Insurance Company, | |
| Defendant. | |

Pending before the Court is Defendant State Farm Life Insurance Company's ("State Farm's") Motion for Summary Judgment (the "Motion"), (Doc. 74), along with its Statement of Facts in Support of its Motion. (Doc. 75.) Plaintiff Earl McClure filed an opposition to State Farm's Motion, (Doc. 82), and a Response to Defendant's Statement of Facts and Statement of Additional Facts, (Doc. 83). State Farm replied. (Doc. 89.) Both parties requested oral argument, but the Court declined to hold oral argument. (*See* Doc. 99.) Having reviewed the pleadings, evidence, and relevant law, the Court will now deny State Farm's Motion in part and grant it in part.

**I.   BACKGROUND**

Plaintiff filed this lawsuit against State Farm on behalf of himself and a proposed class of policyholders in relation to a $100,000 life insurance policy he bought from State Farm in February 1997. The Court certified Plaintiff's proposed class on April 29, 2022. (Doc. 97.)

State Farm sold its "Universal Life" Policy—Form 94030—between 1994 and

2004 (the "Policy"). (Doc. 75 ¶ 1.) The Policy is a "Universal Life" policy, which is a permanent life insurance product providing "both a death benefit and an investment feature that allows the owner to pay premiums" into a policy account. (Doc. 83 at 6 ¶ 2.) The Policy provides a payment to the beneficiary at the time of the insured's death if the Policy has not been terminated. (Doc. 75 ¶ 3.) The Policy includes an individual account value that accrues interest at a guaranteed rate of no less than four percent. (*Id.* ¶ 4.) Under the terms of the Policy, 95% of premiums paid are allocated to the account value, and a "premium expense charge of 5% is deducted from each premium paid." (*Id.* ¶ 6.) Under the terms of the Policy, a "Monthly Deduction" is made consisting of three charges: "(1) the costs of insurance, (2) the monthly charges for any riders, and (3) the monthly expense charge." (*Id.* ¶ 8.) The Policy states that "[t]he monthly expense charge is $5.00." (*Id.* ¶ 9.)

The Policy further states:

> **Monthly Cost of Insurance Rates.** These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class. A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly costs of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

(*Id.* ¶ 12.) The Policy defines the term "Rate Class" as "the underwriting class of the person insured" and states "[a] rate class will be determined for the Initial Basic Amount and each increase in the Basic Amount." (*Id.* ¶ 14.) An Insured's "rate class" is "[t]he underwriting class of the person insured," a reference to the underwriting process by which each Insured is evaluated for factors that might affect his or her life expectancy—e.g., "Standard Rate Class—Male Non-Tobacco." (*Id.* ¶ 32.)

Plaintiff's Complaint contains four claims. Count I is a breach of contract claim for

State Farm's alleged overcharging related to the cost of insurance ("COI") charge caused by unauthorized expense loads. (Doc. 1 ¶¶ 58–65.) Count II is a breach of contract claim alleging that State Farm impermissibly deducts expenses from policyholders in amounts in excess of the fixed expense charge authorized by the Policy. (*Id.* ¶¶ 66–69.) Plaintiff's Complaint also alleges a claim for a conversion (Count III), (*Id.* ¶¶ 70–78), and declaratory relief (Count IV), (*Id.* ¶¶ 79–82).

## II.  LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the non-movant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the non-movant to establish the existence of a

genuine issue of material fact. *Id*. at 1103. The non-movant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the non-movant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the non-moving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

## III. DISCUSSION

State Farm argues that the Court should grant its Motion on all of Plaintiffs' claims. It argues that Plaintiffs' theory of liability misreads the Policy language. The Court will take each claim in turn.

### A. Breach of Contract—Count I

State Farm argues that the COI provision in the Policy—stating that an insured's monthly COI rate is "based on the Insured's age on the policy anniversary, sex, and applicable rate class"—tells each policyholder that the assigned monthly COI rate for each year of the Policy is held is "based on" his or her individual characteristics. (Doc. 74 at 20.) State Farm points out that a recent order in an identical lawsuit decided that the Policy language "unambiguously permits State Farm to consider non-mortality factors in calculating the 'applicable rate class' that State Farm later uses as one of three factors in determining an individual policyholders' monthly [COI] rate." (*Id.* at 20–21 (quoting *Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495, 503 (N.D. Cal. 2021)).) Thus, State Farm argues, the listing of the three factors the COI rate is based upon is not a promise to

- 4 -

policyholders about how State Farm will conduct its underlying rate-making process, but only promises policyholders how State Farm will assign them a COI rate. (*Id.* at 22.) State Farm also contends that Plaintiff's reading of the Policy contravenes legislative goals, public policy, and established actuarial standards. (*Id.*) Lastly, State Farm argues that Plaintiff cannot establish breach or damages even under his reading of the Policy. (*Id.* at 24.)

Plaintiff responds that "the average layman who is untrained in the law or the field of insurance would read the Policy's plain language as prohibiting State Farm from loading its COI Rates with undisclosed profit and expense factors." (Doc. 82 at 11.) Plaintiff points to the orders in *Vogt* and *Jaunich*, which denied summary judgment in favor of State Farm on the same claims, as additional support for his argument. (Doc. 82 at 12 (citing *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2018 WL 1747336, at *4 (W.D. Mo. Apr. 10, 2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020); *Jaunich v. State Farm Life Ins. Co.*, No. CV 20-1567 (PAM/JFD), 2021 WL 5054461, at *2 (D. Minn. Nov. 1, 2021)).)

1. Contract Interpretation in Arizona

Under Arizona law, "'[t]he interpretation of an insurance contract is a question of law' for the Court." *Nat'l Fire Ins. Co. of Hartford v. James River Ins.*, 162 F. Supp. 3d 898, 903 (D. Ariz. 2016), *clarified on denial of reconsideration*, No. CV-14-00765-PHX-JAT, 2016 WL 2606984 (D. Ariz. May 6, 2016) (quoting *Liristis v. Am. Family Mut. Ins. Co.*, 61 P.3d 22, 26 (Ariz. Ct. App. 2002)). "An insurance policy 'must be read as a whole, so as to give a reasonable and harmonious effect to all of its provisions." *Id.* (quoting *Charbonneau v. Blue Cross*, 634 P.2d 972, 975 (Ariz. Ct. App. 1981)). Courts in Arizona construe the written terms of an insurance policy to effectuate the parties' intent and "to protect the reasonable expectation of the insured." *Id.* at 904 (quoting *Liberty Ins. Underwriters, Inc. v. Weitz Co.*, 158 P.3d 209, 212 (Ariz. Ct. App. 2007)). A policy's language "must be viewed from the standpoint of the average layman who is untrained in the law or the field of insurance." *Id.* (quoting *Liristis*, 61 P.3d at 25–26).

Moreover, contract provisions in Arizona are interpreted "according to their plain

and ordinary meaning." *First American Title Ins. Co. v. Johnson Bank*, 372 P.3d 292, 294 (Ariz. 2016). "If a clause appears ambiguous, [Arizona courts] interpret it by looking to legislative goals, social policy, and the transaction as a whole." *First Am. Title Ins. Co. v. Action Acquisitions, LLC*, 187 P.3d 1107, 1110 (Ariz. 2008). If ambiguity remains after examining these factors, a clause is construed against the insurer. *Id.* There is no need to make a preliminary finding of ambiguity before a court considers extrinsic evidence, however, the parol evidence rule excludes "evidence that contradicts or varies the meaning of the agreement." *Taylor v. State Farm Mut. Auto Ins. Co.*, 854 P.2d 1134, 1138–39 (Ariz. 1993).

2. Plain Wording of the Policy

The Court begins by examining the plain text of the Policy. The Monthly COI provision of the contract states: "These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class." (Doc. 75 ¶ 12.) The Policy defines the term "Rate Class" as "the underwriting class of the person insured" and states "[a] rate class will be determined for the Initial Basic Amount and each increase in the Basic Amount." (*Id.* ¶ 14.)

State Farm argues that this language "tells each policyholder that the monthly cost of insurance rate for each year the Policy is held is 'based on' his or her individual characteristics." (Doc. 74 at 20.) State Farm contends that the term "applicable rate class" confirms that the provision refers to the selection of an individual's rate from previously established rates. (*Id.*) This language, State Farm argues, is not a promise to policyholders about how State Farm will undergo its underlying rate-making process. (*Id.* at 22.) It is State Farm's position that during the underlying rate-making process, they can include the additional expenses. Plaintiff argues that the COI rate provision prohibits State Farm from loading unlisted expenses into the COI rates. (Doc. 82 at 11.)

Reading the Policy as a whole, the Monthly COI provision is at best ambiguous. The "based on" language appears to permit State Farm to use only the listed factor in calculating COI rates. "[A]ge on the Policy anniversary" and "sex" are self-explanatory,

1  but "applicable rate class" is not.  While State Farm contends that the term "applicable rate
2  class" signals to policyholders that individual's rates are selected from previously
3  established rates, nothing in the definition would signal to the average policyholder that
4  State Farm loaded non-mortality expenses into the calculation.  Indeed, State Farm could
5  have explicitly told consumers that non-mortality factors—such as the expenses that were
6  loaded into the calculation—were included because State Farm is the party that drafted the
7  Policy.  However, this was not done.

This Court recognizes that the *Bally* Court's interpretation of the provision, which is touted by State Farm, is another plausible interpretation.  There, the court determined that "[t]he Monthly COI Rates provision is not a promise to policyholders about how State Farm will conduct its underlying rate-making process.  The provision only promises policyholders how State Farm will assign them a costs of insurance rate—by using three factors, one of which is applicable rate class." *Bally*, 536 F. Supp. 3d at 507.  The *Bally* court based its reasoning on the fact that the term "Rate Class" was defined to include underwriting, finding that the definition of Rate Class would put the policyholder on notice that "the Monthly COI Rates provision speaks to the underwriting process." *Id.*

Although this Court agrees that the Bally Court's interpretation is plausible, it does not believe that a layperson reading the Policy would understand that State Farm was loading *non-mortality-based expenses* into the underwriting process, especially in light of the fact that the Policy expressly defined the Policy expenses elsewhere. (*See* Doc. 75 ¶¶ 6, 9.)  The court in *Bally* also pointed out that because the Monthly COI rate provision "points to a chart of maximum rates that itself is organized by age, sex, and already-developed rate classes, the provision can only reasonably be read to refer to the process of selecting an individual's rates from previously established rates rather than to the process of developing rates in the first instance." *Bally*, 536 F. Supp. 3d at 507 (cleaned up). However, this still would not put a *layperson* reading the Policy on notice that State Farm was loading non-mortality based expenses into the calculation.  Furthermore, as the plaintiff in *Bally* pointed out, the Monthly COI provision also states that the COI rates "can

- 7 -

1 be adjusted for projected changes in mortality," suggesting that only mortality factors may be used when setting COI rates. *Id.* at 508. This Court finds that language is, indeed, suggestive that State Farm would only include mortality factors when calculating the COI rates. Thus, the Court finds that the provision can plausibly be determined in more than one way. Reading the text of the Policy as a whole, the proper interpretation of the COI rate provision is, at best, ambiguous.

### 3. Legislative Goals, Social Policy, and Transaction as a Whole

State Farm next argues that Plaintiff's reading of the policy also contravenes legislative goals and social policy by "impairing State Farm's ability to provide a financially viable insurance product." (Doc. 74 at 22 (quoting *Action Acquisitions*, 187 P.3d at 1110).) State Farm contends that Plaintiff's argument—that only "mortality expectations" can be considered in determining COI rates with no other adjustments—would not comply with actuarial and regulatory requirements. (*Id.* at 23.) Thus, State Farm argues its evidence is intended to show "not that policyholders are insurance experts, but that Plaintiff's reading is objectively unreasonable and would not be workable or lawful." (Doc. 89 at 22.)

Plaintiff argues that State Farm's reliance on the actuarial standards is misplaced because they have no bearing on how a layperson would interpret the Policy where, as here, policyholders are not furnished with or otherwise made aware of the standards or how they would apply. (Doc. 82 at 24.)

State Farms' arguments regarding legislative goals and social policy must be rejected. State Farm's proffered extrinsic evidence regarding regulatory standards does nothing to convince the Court how Plaintiff's interpretation is unreasonable because the plain language of the Policy supports Plaintiff's reading. State Farm's proffered evidence regarding the legislative goals, social policy, and transaction as a whole might support State Farm's reading, but they cannot alter the actual text of the Policy. Plaintiff's plausible interpretation of the Policy language could lead a layperson to believe that State Farm was able to cover its expenses and make a profit with its $5.00 monthly expense charge and the

5% premium expense charge. Nothing else in the Policy would lead a layperson to believe that State Farm needed to load expenses to its COI calculation for State Farm to offer a financially viable product or comply with actuarial and regulatory requirements. Indeed, information about actuarial or regulatory requirements were not provided to policyholders. Thus, policyholders would only be left to assume that State Farm could generate sufficient margins with the expenses already listed in the Policy. State Farm's argument that they would be unable to earn a profit if Plaintiff's interpretation was correct does not allow the Court to alter the plain language of the Policy. The Court agrees that "the terms of the insurance policy at issue are so dense, a lay person would not understand that State Farm expected to derive a profit from the COI." *Vogt*, 2018 WL 1747336, at *4. Therefore, the Court finds that considering legislative goals and the transaction as a whole do nothing to clarify the ambiguities in the Policy.

    4. <u>Cases from Other Jurisdictions</u>

Courts have come to differing conclusions regarding the exact Policy language at issue in this case. In *Vogt*, the court concluded that, "[g]iven the COI language in the Vogt policy and its context in the policy as a whole, the Court believes that no reasonable lay person would expect that State Farm was permitted to use any factor it wanted to calculate the cost of insurance." 2018 WL 1747336, at *4. Thus, it determined there was, at minimum, an ambiguity under Missouri law that should be construed against the insurance company. *Id.* Accordingly, the court denied State Farm's Motion for Summary Judgment. *Id.* at *9. Likewise, in affirming the order, the Eighth Circuit concluded that "the phrase 'based on' in the COI provision is at least ambiguous and thus must be construed against State Farm." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 764 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 2551 (2021). Likewise, in *Jaunich*, the court found that the plaintiff had raised genuine issues of material fact as to whether the Policy was ambiguous and whether State Farm breached it. 2021 WL 5054461 at *2. Conversely, in *Bally*, the Court determined that "the Monthly COI Rates provision unambiguously permits State Farm to consider non-mortality factors in calculating the 'applicable rate class' that State Farm later

uses as one of three factors in determining an individual policyholder's monthly cost of insurance rate." 536 F. Supp. 3d at 503. Thus, the court granted State Farm's motion for summary judgement for the COI breach of contract claim (Count I). *Id.* at 508.

The differing interpretations of the Policy language at issue further bolster the Court's conclusion that the COI language in the Policy is ambiguous. "Arizona follows the principle of construction that, where various jurisdictions reach different conclusions as to the meaning, intent, and effect of the language of an insurance contract, a strong indication of ambiguity is established." *City of Glendale v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. CV-12-380-PHX-BSB, 2013 WL 1296418, at *9 (D. Ariz. Mar. 29, 2013) (quoting *Fire Ins. Exch. v. Berray*, 694 P.2d 259, 263 (Ariz. Ct. App. 1983), *as modified on other grounds*, 694 P.2d 191 (1984)). In Arizona, ambiguities are interpreted against the insurer. *See Action Acquisitions, LLC*, 187 P.3d at 1110. Accordingly, State Farm's Motion is denied as to Plaintiff's Count I breach of contract claim.[1]

### B. Breach of Contract—Count II

State Farm also argues that it is entitled to summary judgment on Plaintiff's Count II breach of contract claim. (Doc. 74 at 24.) Count II alleges that State Farm impermissibly deducts expenses from policyholders in amounts in excess of the fixed expense charges authorized by the Policy. (Doc. 1 ¶¶ 66–69.) Plaintiff alleges that, "[b]y loading Monthly [COI] Rates with undisclosed and unauthorized expenses, Defendant impermissibly deducts expenses from the Account Values of Plaintiff and the Class in amounts in excess of the fixed expense charges expressly authorized by the Policies." (*Id.* ¶ 67.) Plaintiff's limits its Count II breach of contract claim to solely the $5.00 monthly expense charge. (*See* Doc. 82 at 26 n. 12.)

The Policy states that "[t]he monthly expense charge is $5.00." (Doc. 75 ¶ 9.) State Farm argues that this language cannot be read to limit how the COI charges are developed

---

[1] State Farm's argument that Plaintiff cannot show breach or damages for its Count I breach of contract claim is rejected. State Farm bases this argument on the contention that Plaintiff's expert, Scott Witt's, report is inadmissible. (Doc. 74 at 24.) However, the Court previously rejected this argument. (Doc. 97 at 15–21.)

- 10 -

during the underlying pricing phase of the product. (Doc. 74 at 25.) State Farm also contends that, reading the Policy in context, the monthly expense provision does not limit the expenses it can charge. (*Id.* at 26.) It points to language on page 9 of the Policy in the "Monthly Deduction" Section, which states that the monthly deduction will include the "Monthly Expense Charge" ($5.00) and the "Monthly Cost of Insurance." (Doc. 1-2 at 2.) Thus, State Farm contends that the provision setting the Monthly Expense Charge at $5.00 "simply identifies the amount ($5.00) of the monthly expense charge disclosed on page 9" of the Policy. (Doc. 89 at 16–17.)

Plaintiff argues that State Farm's arguments regarding his Count II claim for breach of contract has been rejected by every court to analyze the issue, (Doc. 82 at 26), and that State Farm's interpretation of the Policy is contrary to the Policy's plain language. (*Id.* at 28.)

The three courts that have examined State Farm's arguments on Plaintiff's Count II breach of contract claim have rejected State Farm's attempts at summary judgment. In *Vogt*, the court concluded that State Farm breached the Policy by collecting the $5.00 per month monthly expense charge in addition to "unspecified expenses that were factored into the COI rates." Order on Summary Judgment, *Vogt v. State Farm Life Ins. Co.*, No. 16-cv-4170-NKL (W.D. Mo. June 2, 2018), ECF No. 335. In *Bally*, the court noted that "[b]ecause State Farm called it a 'monthly expense charge,' policyholders could reasonably understand it to cover all monthly expenses." *Bally*, 536 F. Supp. 3d at 509. The court in *Bally* found that "[t]he class's interpretation, that '[t]he monthly expense charge is $5.00' means that policyholders will not be charged any more than five dollars a month in expenses, is therefore entirely reasonable, and possibly the only reasonable reading." *Id.* at 510. The court went on to conclude that the monthly expense charge provision of the Policy was ambiguous, at best, and would be interpreted in favor of the insured under California law. *Id.* at 511. In *Jaunich*, the court found that State Farm had failed to establish that there was no dispute of material fact as to the expense charge provision and denied summary judgment. 2021 WL 5054461, at *3.

- 11 -

Turning to the Policy's plain language, the Court determines that the monthly expense charge provision is, at best, ambiguous. There is, undisputedly, no express promise to limit the monthly expense charge to $5.00 in the Policy. Furthermore, the provision does not explain what the monthly expense charge is meant to cover. The Policy states that "[t]he monthly expense charge is $5.00." (Doc. 1 ¶ 9.) The plain meaning of this provision indicates that the monthly expense charge for the Policy will be $5.00, no more, no less. It does not clearly permit State Farm to deduct more expenses each month as State Farm contends. Nonetheless, it is undisputed that State Farm also deducted undisclosed expenses through the COI charge. The language of the Policy does not explain the purpose of the "monthly expense charge," and the purpose for the charge is not clear from the context of the Policy. The Court agrees with the reasoning in *Bally* that:

> Had Sate Farm called it something else—something generic but unrelated to expenses, like a $5.00 "monthly fee," or something relating to expenses but limited in scope, like a $5.00 "monthly stamp expense charge"—State Farm would be on firmer footing. Because State Farm called it a "monthly expense charge," policyholders could reasonably understand it to cover all monthly expenses. Words matter, and State Farm is the party that chose the words.

*Bally*, 536 F. Supp. 3d at 509. Accordingly, the Court finds that policyholders could reasonably read this language as including all monthly expenses for the Policy.

State Farm's argument that the monthly expense charge provision merely defines the term for the breakdown of deductions in the "Monthly Deduction" section, while plausible, is not the most likely meaning of the Policy language. The monthly expense charge simply states that it is $5.00, and there is no other language in the Policy to alert policyholders that there were expenses included elsewhere in the Policy besides the five percent premium expense charge. Thus, while plausible, the Court finds that a layperson would most likely read this language to mean that the $5.00 monthly expense charge encompassed all the expenses charged by the Policy besides the five percent premium expense charge, which was expressly listed.

State Farm attempts to differentiate the result here from that in *Vogt*, *Bally*, and

*Jaunich* by pointing out that Arizona courts are "reluctant" to read implied promises into contracts. (Doc. 74 at 28–29 (citing *Farnam Companies, Inc. v. Stabar Enterprises, Inc.*, No. CV 03-503-PHX-NVW, 2005 WL 3369473, at *9 *D. Ariz. Dec. 12, 2005).) However, the Court need not read an implied promise into the Policy in order to find that the language regarding the monthly expense charge is, at best, ambiguous. In fact, the monthly expense provision could plausibly be read as an express promise. Thus, the Court must reject this argument.

Likewise, the Court is unpersuaded by State Farm's argument that Plaintiff cannot establish breach or damages under his reading of the Policy because his expert's damages model lumps all expenses together and "does not establish that State Farm recouped fixed expenses through its cost of insurance charge." (Doc. 74 at 29–30.) This argument is irrelevant to whether State Farm breached the plain language of the Policy. Under Plaintiff's plausible reading of the Policy, if State Farm charged more than $5.00 for expenses, State Farm breached the Policy, and Plaintiff can show damages through Witt's model. State Farm's Motion is denied as to Count II.

**C. Conversion—Count III**

State Farm contends that it is entitled to summary judgment on Plaintiff's conversion claim, arguing that: (1) Plaintiff cannot recast a contract claim as a conversion claim, and (2) Plaintiff has not shown conversion of a specific chattel. (Doc. 74 at 30–31.)

In Arizona, conversion is defined as "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) (quoting *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 802 P.2d 1032, 1034 (Ariz. Ct. App. 1990)). In order to maintain an action for conversion, "a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion." *Id.* (citations omitted). A conversion claim cannot be maintained to collect on a debt that could be satisfied by money generally, but money can be the subject of a conversion claim if they money "can be described, identified or segregated, and an obligation to treat it in a specific manner is

established." *Id.* (quoting *Autoville, Inc. v. Friedman*, 510 P.2d 400, 402–403 (Ariz. Ct. App. 1973)).

Plaintiff's conversion claim is barred by the economic loss doctrine. In Arizona, "a contracting party is *limited wholly* to its contractual remedies for purely economic loss related to the subject of the parties' contract." *Cook v. Orkin Exterminating Co.*, 259 P.3d 149, 153 n. 6 (Ariz. Ct. App. 2011) (citing *Flagstaff Affordable Hous. Ltd. P'ship v. Design All., Inc.*, 223 P.3d 664, 670 (Ariz. 2010)) (emphasis original). The doctrine refers to "a common law rule limiting a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to person or other property." *Sitevoice, LLC v. Gyrus Logic, Inc.*, No. 2:14-CV-0883-HRH, 2014 WL 4722329, at *6 (D. Ariz. Sept. 23, 2014) (quoting *Flagstaff*, 223 P.3d at 667).

Here, Plaintiff has alleged no tortious conduct apart from a breach of the Policy language. Essentially, Plaintiff's conversion claim is based upon exactly the same conduct as his breach of contract claims in Counts I and II: the alleged unauthorized loading of non-mortality expenses into the COI calculation. (*See* Doc. 1 ¶ 72.) Plaintiff proffers no independent conduct constituting a tort for which he suffered a loss. Accordingly, Plaintiff is limited to his contractual remedies. Even if this were not the case, Plaintiff's conversion claim fails because Plaintiff has failed to show that the money allegedly wrongfully converted by State Farm could not be satisfied by money generally. *See Gerhke*, 91 P.3d at 365. Therefore, the Court will grant State Farm's Motion for Plaintiff's conversion claim.

State Farm additionally argues that because Plaintiff's conversion claim fails, his punitive damages claim likewise fails. (Doc. 74 at 31 n. 6.) State Farm is correct. Punitive damages cannot be awarded for breach of contract. *Cont'l Nat. Bank v. Evans*, 489 P.2d 15, 19 (Ariz. 1971). Accordingly, because Plaintiff's conversion claim fails, he cannot recover punitive damages.

### D. Declaratory Relief—Count IV

State Farm argues that Plaintiff's claim for declaratory relief (Count IV) must fail

because Plaintiff's breach of contract claims fail (Counts I and II). (Doc. 74 at 31.) Moreover, State Farm contends that declaratory relief is improper because a plaintiff seeking injunctive relief must show a "very significant possibility of future harm," *Id.* (quoting *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013)), and Plaintiff cannot do so here because Plaintiff is a former policyholder, (*id.* at 31–32). Lastly, State Farm argues that Plaintiff does not have standing to pursues his declaratory judgment claim because he terminated his Policy years ago. (Doc. 74 at 32.)

Plaintiff argues that State Farm's argument—that declaratory relief is duplicative of his breach of contract claims and serves no useful purpose—has been rejected before and should be rejected here. (Doc. 82 at 31.) He further argues that the declaratory judgment will serve a useful purpose in clarifying the rights, duties, and obligations of the parties. (*Id.*)

A plaintiff must demonstrate standing for each form of relief sought. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). "[A] plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010).

Here, Plaintiff has not shown that he has standing to pursue his declaratory relief claim. It is undisputed that Plaintiff canceled his Policy in 1999. (*See* Doc. 75 ¶ 42; Doc. 83 ¶ 42.) Thus, while Plaintiff has standing to pursue claims for *past* injuries, he has not demonstrated an ongoing injury that would entitle him to declaratory relief. Accordingly, the Court will grant State Farm's Motion for Summary Judgment on Count IV.

### E. Statute of Limitations

Lastly, State Farm contends that Plaintiff's claims are time barred because he acquired his policy in 1997, and deductions from his account began almost immediately. (Doc. 74 at 32.) Because Plaintiff did not bring this lawsuit until 2020, State Farm argues that his claims are time-barred. (*Id.*) State Farm argues that the discovery rule does not apply because Plaintiff was a licensed insurance agent in Arizona who had sold hundreds

of policies to Arizona consumers and because he could have learned the basis of COI charges "simply by asking." (*Id.* at 32–33.) Moreover, State Farm argues that the COI rates "were fully disclosed to Arizona regulators and to policyholders." (*Id.* at 32.)

In Arizona, the limitations period for a breach of contract claim is six years. Ariz. Rev. Stat. Ann. § 12-548(A)(1). "[A] cause of action accrues, and the statute of limitations commences, when one party is able to sue another." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 967 (Ariz. 1995). When a defendant asserts the statute of limitations as a defense, the defendant has the burden of proving that the compliant falls within the statute. *Troutman v. Valley Nat. Bank of Arizona*, 826 P.2d 810, 814 (Ariz. Ct. App. 1992). "However, the burden of proving that the statute was tolled or that the defendant is estopped from relying on the statute falls on the plaintiff." *Id.*

Under the discovery rule, "a cause of action does not accrue until the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *Doe v. Roe*, 955 P.2d 951, 960 (Ariz. 1998). In Arizona, the discovery rule can apply to a breach of contract claim. *See Gust*, 898 P.2d at 968. In considering the application of the discovery rule under Arizona law, the important inquiry is "whether the plaintiff's injury or the conduct causing the injury is difficult for plaintiff to detect." *Id.* Additionally, "[w]hen discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury." *Doe*, 955 P.2d at 961 (citing *Gust*, 898 P.2d at 969).

Here, State Farm has shown that the Complaint falls outside the statute of limitations. Thus, Plaintiff has the burden of providing evidence that the statute of limitations should be tolled by the application of the discovery rule to pass summary judgment. Plaintiff has carried that burden. State Farm did not disclose its mortality assumptions or its actual COI Rates to policyholders. (Doc. 39-6 at 8; Doc. 39-4; Doc. 1-1; Doc. 1-2.) The rates were not disclosed in the Policy or in the annual statements. (*See* Doc. 1-1; Doc. 1-2; Doc. 39-4.) State Farm proffered no other documents showing that these rates were disclosed to policyholders. (*See* Doc. 39-10 at 23.) There is no dispute that State Farm does not provide its underlying pricing mortality rates to policyholders.

(Doc. 82 at 31.) Thus, there is at least a dispute of fact as to whether Plaintiff could have discovered State Farm's alleged loading of expenses into the COI calculation when his policy was active. There is also a question of fact as to when Plaintiff's causes of action accrued. Accordingly, the Court cannot rule, as a matter of law, that this action is barred by the statute of limitations.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting in part and denying State Farm's Motion for Summary Judgment in accordance with this Order. (Doc. 74.)

Dated this 23rd day of June, 2022.

_____
Honorable Susan M. Brnovich
United States District Judge